UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| MARK KENDUS and KEITH KENDUS, individually and on behalf of all persons similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> USPACK SERVICES LLC and US PACK MED LLC, <br><br> Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. 1:19-cv-496 <br><br> **CLASS AND COLLECTIVE ACTION COMPLAINT** |

Plaintiffs Mark Kendus and Keith Kendus, through their undersigned counsel, individually and on behalf of all persons similarly situated, file this Collective and Class Action Complaint against Defendant USPack Services, LLC, formerly known as USPack Logistics Corp., LLC ("USPack") and Defendant US Pack Med LLC, formerly known as Medifleet, LLC and Medifleet, Inc. ("Medifleet"), a subsidiary of USPack, seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*. ("FLSA"), and Maryland State Law. Plaintiffs and the class they seek to represent have been subject to improper deductions from their pay and have been denied overtime pay because of Defendants' practice of improperly classifying Plaintiffs and other courier drivers as independent contractors. The following allegations are based on personal knowledge as to Plaintiffs' own conduct and on information and belief as to the acts of others.

1

## I. JURISDICTION AND VENUE

1. Jurisdiction over Plaintiffs' FLSA claims is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2. This Court has supplemental jurisdiction over Plaintiffs' Maryland state law claims pursuant to 28 U.S.C. § 1367 because these claims are so related to Plaintiffs' claims under the FLSA that they form part of the same case or controversy.

3. The District Court of Maryland is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiffs are residents of Dorchester County Maryland and the events giving rise to Plaintiffs' claims occurred within this Judicial District.

## II. PARTIES

4. Defendant USPack Services LLC is a Delaware limited liability company with its corporate headquarters located in New York, New York.

5. USPack operates business locations and makes deliveries throughout the State of Maryland.

6. Defendant US Pack Med LLC, which is currently operated by USPack Services LLC, is a Connecticut limited liability company with its corporate headquarters located in Orlando, Florida. It was known as Medifleet, LLC from December 28, 2017 until January 24, 2019, and Medifleet, Inc prior to that for the remainder of the applicable statutory period.

7. Plaintiff Mark Kendus is an adult resident of Dorchester County, Maryland. Plaintiff worked as a full-time delivery courier for Medifleet from January 2011 to January 2018. During this time, Medifleet merged with a company known as Fleetgistics in March 2013 and

2

that business was then acquired by USPack in May 2017. Throughout this time, his work as a delivery courier in the area was virtually unchanged.

8. Plaintiff Keith Kendus is an adult resident of Dorchester County, Maryland. Plaintiff worked as a full-time delivery courier for Medifleet from December 2010 until January 2010. During this time Medifleet merged with a company known as Fleetgistics in March 2013, and that business was then acquired by USPack in May 2017. Throughout this time, his work as a delivery courier in the area was virtually unchanged.

9. Plaintiffs bring this action on their own behalf as well as on behalf of a class of similarly situated individuals, including all other persons who have worked for USPack and/or Medifleet as courier drivers operating in the State of Maryland at any time during the applicable limitations period, and who have been classified as independent contractors rather than employees.

## III. CLASS DEFINITIONS

10. Plaintiffs bring Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b) as a collective action on behalf of themselves and the following group of litigants, pending their opting into the action:

> All courier drivers who were classified as independent contractors while performing delivery services for USPack and Medifleet in Maryland who may choose to opt into this action (the "FLSA Class").

11. Plaintiffs bring Counts II and III of this lawsuit as a Fed R. Civ. P. 23(b) class action for damages under the Maryland Wage and Hour Law on behalf of themselves and the following class:

> All courier drivers who were classified as independent contractors while performing delivery services for USPack and Medifleet since February 20, 2016, in Maryland (the "Maryland Class").

12. The FLSA Class and the Maryland Class are together referred to as the "Classes," and the people comprising them as "Class Members."

## IV. STATEMENT OF FACTS

13. USPack provides services throughout the United States, including throughout Maryland. USPack and Medifleet supply courier services for doctors' offices, hospitals and healthcare-related laboratories as a part of their regular course of business. USPack and Medifleet utilizes courier drivers like Plaintiffs and Class Members, whom Defendants classify as independent contractors to provide courier services for its clients.

14. USPack and Medifleet operate distribution centers for materiel out of hospitals in Cambridge, Maryland and Easton, Maryland, among other locations.

15. Drivers working for USPack and Medifleet pick up blood and other samples from local doctors' offices and deliver them to hospitals and laboratories throughout Maryland.

16. Plaintiff Mark Kendus began working for Medifleet as a medical delivery driver in January 2011. In March 2013, Medifleet merged with Fleetgistics and in May 2017, it was acquired by USPack. In January 2018, Mark Kendus stopped working for USPack.

17. Plaintiff Keith Kendus began working for Medifleet as a medical delivery driver in January 2011. In March 2013, Medifleet merged with Fleetgistics and in May 2017, it was acquired by USPack. In January 2018, Mark Kendus stopped working for USPack.

18. Throughout the term of Plaintiffs' employment for these firms, the requirements and basic structure of the Plaintiffs' employment as medical delivery drivers in the area was largely unaltered by changes in ownership.

19. In order to work for USPack and Medifleet, Plaintiffs and Class Members are required to provide their own vehicles.

20. While USPack and Medifleet classify Plaintiffs and Class Members as "independent contractors" the nature of the services that Plaintiffs and Class Members perform, and the manner in which they perform these services, make it clear that they are actually employees. USPack and Medifleet are in complete control of the manner in which Plaintiffs and Class Members perform their services and do not merely confine themselves to monitoring the plaintiff class's work output.

    a. USPack and Medifleet require Plaintiffs and Class Members to comply with the instructions dictated by written and unwritten policies, procedures, and directives regarding Plaintiffs' and Class Members' duties.

    b. USPack and Medifleet dictate the manner in which the deliveries performed by Plaintiffs and Class Members are to be made. For example, Plaintiffs were required to arrive at medical facilities of USPack clients in Cambridge, Maryland, and Easton, Maryland in advance of scheduled routes each day. Plaintiffs and Class Members may not deviate from the order and schedule of the delivery, and they do not have any say in the amount of deliveries that must be made each day.

    c. USPack and Medifleet employ managers who have supervisory responsibility over Plaintiffs and Class Members and who can and do assign and direct their work. Plaintiffs and Class Members are required to call a USPack manager 2 hours before their scheduled shift to be permitted to drive a route during the day.

    d. Plaintiff and Class Members are required to perform delivery services according to a fixed schedule.

e. USPack and Medifleet require Plaintiffs and Class Members to use USPack's software application on their phones, which tracks the progress the drivers make in their delivery routes throughout the day. If the plaintiffs do not complete their individual deliveries within 15 minutes of their schedule dictated by USPack, their deviation from schedule is noted and they are immediately contacted by a dispatcher and admonished.

f. Plaintiffs and Class Members also are not allowed to set their own hours. When USPack and Medifleet alter schedules to expand hours, the Plaintiffs do not have any ability to refuse the assignments.

g. Plaintiffs were required to work a minimum of 40 hours per week, over a five-day work week, leaving no reasonable time for drivers to perform any work outside their relationship with USPack and Medifleet. Plaintiffs routinely worked in excess of 40 hours a week. Upon information and belief, other Class Members work similar schedules.

h. Plaintiffs and Class Members are forbidden to subcontract their delivery duties to other workers.

i. Plaintiffs and Class Members are required to wear USPack uniforms and carry Shore Health badges that identify them as employees of Medifleet.

j. Plaintiffs and Class Members received no stock or ownership interest in the defendant companies as compensation.

k. Plaintiffs and Class Members have no control over the amount(s) charged for their courier or delivery services. They do not negotiate with customers regarding the rates charged for USPack and Medifleet's services.

21. Plaintiffs and Class Members perform services – which include the pickup and delivery of products and materials – that are within the usual course of business of USPack and Medifleet.

22. Specifically, Plaintiffs and other Class Members pick up blood and other samples from local doctor's offices and deliver them to hospitals and laboratories on behalf of USPack and Medifleet, under a contract with Shore Health.

23. Plaintiffs and Class Members also pick up mail and medical supplies from hospitals and laboratories and deliver them to local doctors' offices.

24. USPack required that every working day, Plaintiffs report to hospital storerooms in advance of their routes. They would complete their delivery routes on the cell phone application according to the schedule provided by USPack, subject to constant monitoring from the dispatcher. Upon information and belief, other Class Members work similar schedules and follow the same protocol.

25. Plaintiffs and Class Members are not customarily engaged in an independently established trade, occupation, profession, or business. Plaintiff and Class Members are entirely dependent upon USPack for their work.

26. USPack did not pay Plaintiffs or Class Members overtime compensation when they worked in excess of 40 hours per week.

    a. Mark Kendus would typically work 9 hours a day, 5 days a week throughout his employment to fulfill the schedule set forth by USPack, resulting in a 45 hour workweek.

    b. Keith Kendus would typically work 8.5 hours a day, 5 days a week to fulfill the schedule set forth by USPack, resulting in a 42.5 hour workweek.

      c.      In addition to this typical schedule, USPack would sometimes task the Plaintiffs with "stat" orders, which would typically require at least two hours of additional work to complete.

27.      USPack makes deductions at their sole discretion from Plaintiffs' and Class Members' pay, including, but not necessarily limited to, the following:

      a.      Insurance for occupational accidents deducted from a percentage of pay, capped at $21 per pay period.

      b.      Uniforms required to perform their work, at $17 per uniform.

      c.      A $15 per pay period fee to process scanned information from drivers who do not have smartphones.

      d.      A $12 per pay period fee to use the software to scan information on smartphones.

      e.      A fee calculated as a percentage of pay, purportedly for brokering the delivery contracts with various hospitals, regardless of whether these contracts have had to be negotiated in any way.

      f.      An unexplained $75 deduction taken from both Plaintiffs' last pay period, listed only as "misc" on their pay stubs.

28.      In January 2018, USPack first instituted the software and brokerage fee deductions. When the Plaintiffs asked for a raise to cover these fees, they were rebuffed and terminated their employment with USPack.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

29.     Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Class as defined above.

30.     Plaintiffs desire to pursue their FLSA claims on behalf of all individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

31.     Plaintiffs and the FLSA Class members are "similarly situated as that term is used in 29 U.S.C. § 216(b) because, *inter alia*, all such individuals currently work or worked pursuant to Defendants' previously described common business and compensation practices as described herein, and, as a result of such practices, have been misclassified as independent contractors and have not been the paid full and legally mandated overtime premium for hours worked over forty (40) during the workweek.  Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common misclassification, compensation, and payroll practices.

32.     Specifically, Defendants misclassified Plaintiffs and FLSA Class members as independent contractors and paid them a set rate for the route they drove regardless of how many hours they worked.

33.     The similarly situated employees are known to USPack and Medifleet, are readily identifiable, and can easily be located through USPack and Medifleet's business records.

34.     USPack and Medifleet employ many FLSA Class members throughout the United States.  These similarly situated employees may be readily notified of this action through U.S. Mail and/or other means and allowed to opt in to this action pursuant to 29 U.S.C. § 216(b), for

the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS

35. Plaintiffs Mark Kendus and Keith Kendus bring this class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the Maryland Class, as defined above.

36. The members of the Maryland Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than 10 members of the Maryland Class in the area where the Plaintiffs worked alone, and USPack operated in multiple other areas of the state.

37. Plaintiffs Mark Kendus and Keith Kendus will fairly and adequately represent and protect the interests of the Maryland Class because there is no conflict between the claims of Plaintiffs Mark Kendus and Keith Kendus and those of the Class, and Plaintiffs Mark Kendus and Keith Kendus are typical of the claims of the Class. Plaintiffs' counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

38. There are questions of law and fact common to the proposed Class, which predominate over any questions affecting only individual class members, including, without limitation: whether Defendant has violated and continues to violate Maryland law through its policy or practice of misclassifying driver couriers as independent contractors, and thereby failing to pay them overtime compensation and whether the Defendant has unlawfully deducted wages from their misclassified employees' pay.

39. Plaintiffs Mark Kendus and Keith Kendus' claims are typical of the claims of the Maryland Class in the following ways: (1) Plaintiffs are members of the Class; (2) Plaintiffs'

claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Classes, their misclassification and exclusion from their legal benefits as employees; (3) Plaintiffs' claims are based on the same legal and remedial theories (i.e. MD Labor & Emply §§ 3-415, 3-420, 3-503)  as those of the Class and involve similar factual circumstances; (4) there are no conflicts between the interests of Plaintiffs and the members of the class; and (5) the injuries suffered by Plaintiffs are similar to the injuries suffered by the members of the class, having worked unpaid overtime and having had involuntary deductions from their paychecks.

40. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Maryland class predominate over any questions affecting only individual class members.

41. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.  The classes are readily identifiable from Defendant's own records.  Prosecution of separate actions by individual members of the classes would create the risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendant.

42. A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical.  Furthermore, the amounts at stake for

many of the members of the Maryland Class, while substantial, are not great enough to enable them to maintain separate suits against Defendant. These similarly situated employees may be readily notified of this action through direct U.S. mail and/or other appropriate means and allowed to opt out of it pursuant to Fed. R. Civ. P. 23(c)(2), for the purpose of adjudicating their claims for overtime compensation.

## COUNT I
### Violation of the FLSA Overtime Provision
**(On Behalf of the FLSA Collective Action)**

43. All previous paragraphs are incorporated as though fully set forth herein.

44. The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he is employed. See U.S.C. § 207(a)(1).

45. The FLSA defines "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee…" 29 U.S.C. § 203(d).

46. USPack is subject to the wage requirements of the FLSA because USPack is an "employer" under 29 U.S.C. § 203(d).

47. At all relevant times, USPack was an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA 29 U.S.C. § 203.

48. Medifleet is subject to the wage requirements of the FLSA because Medifleet is an "employer" under 29 U.S.C. § 203(d).

49. At all relevant times, Medifleet was an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA 29 U.S.C. § 203.

50. During all relevant times, Plaintiffs and the FLSA Class members were covered employees entitled to the above-described FLSA protections. See 29 U.S.C. § 203(e).

51. Plaintiffs and the FLSA Class members are not exempt from the requirements of the FLSA.

52. Plaintiffs and the FLSA Class members are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1).

53. USPack and Medifleet, pursuant to its policies and practices, failed and refused to pay overtime premiums to Plaintiffs and FLSA Class Members for all their overtime hours worked by misclassifying Plaintiffs and the FLSA Class as independent contractors, thereby exempting them from the requirements of the FLSA.

54. USPack and Medifleet knowingly failed to compensate Plaintiffs and the FLSA Class at a rate of one and one-half (1 ½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207(a)(1).

54. In violating the FLSA, USPack and Medifleet acted willfully and with reckless disregard of clearly applicable FLSA provisions.

55. In violating the FLSA, on information and belief, USPack and Medifleet did not have any good faith basis to rely on any legal opinion or advice to the contrary.

## COUNT II
### Maryland Wage and Hour Law
**(on Behalf of Plaintiffs Mark Kendus and Keith Kendus and the Maryland Class)**

56.     All previous paragraphs are incorporated as though fully set forth herein.

57.     The Maryland Wage and Hour Law ("MWHL") requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which they are employed. See MD Labor & Emply §§ 3-415 and 3-420.

58.     USPack and Medifleet are subject to the overtime requirements of the MWHL because USPack and Medifleet are employers under MD Labor & Emply § 3-401.

59.     During all relevant times, Plaintiffs Mark Kendus and Keith Kendus and the Maryland Class Members were covered and entitled to the above-described MWHL's protections. See MD Labor & Emply § 3-401.

60.     USPack and Medifleet failed to compensate Plaintiffs Mark Kendus and Keith Kendus and the Maryland class members at a rate of one and one-half (1 ½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of MD Labor & Emply §§ 3-415 and 3-420.

## COUNT III
### Maryland Wage Payment and Collection Law
**(on Behalf of Plaintiffs Mark Kendus and Keith Kendus and the Maryland Class)**

61.     All previous paragraphs are incorporated as though fully set forth herein.

62.     The Maryland Code, Labor and Employment states that employers may not make a deduction from the wage of an employee unless ordered by a court, expressly authorized in

writing by the employee, authorized by the Commissioner, or otherwise made in accordance with another law, rule, or regulation.  MD Labor & Emply § 3-503.

63. During all relevant times, Plaintiffs Mark Kendus and Keith Kendus and the Maryland class members were covered and entitled to the above-described protections.  See MD Labor & Emply § 3-503.

64. USPack and Medifleet made improper deductions from Mark Kendus and Keith Kendus and the Maryland Class Members' pay in violation of MD Labor & Emply § 3-503.

65. USPack and Medifleet's failure and refusal to pay wages due as required by Maryland law was willful and intentional, was not the result of any bona fide dispute between Plaintiffs and the Maryland class members and Defendant, and was not in good faith.  As a consequence, Plaintiffs and Maryland class members are entitled to recover, in addition to their wages, up to three (3) times the amount of the wages claimed as liquidated damages pursuant to MD Labor & Emply § 3-507.2, as well as reasonable attorney's fees and costs.

## JURY DEMAND

Plaintiffs request trial by jury on all of their claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek the following relief on behalf of themselves and all others similarly situated:

    a.    An order certifying a collective action under Count I to proceed pursuant to 29 U.S.C. § 216(b) for all FLSA claims and permitting Plaintiff to notify other USPack delivery drivers of their right to opt-in to this action under the FLSA, pursuant to 29 U.S.C. § 216(b).

    b.    An order certifying a class action under Counts II and III to proceed pursuant to Rule 23 of the Federal Rules of Civil Procedure for all Maryland state law claims on behalf of the Maryland Class;

    c.    A declaration that Defendants misclassified Plaintiffs and Class Members as independent contractors instead of employees;

    d.    Injunctive relief requiring Defendants to comply with the FLSA and Maryland state employment laws;

    e.    A judgment in favor of Plaintiffs and Class Members for all penalties and liquidated damages allowed by law;

    f.    An award of all compensatory damages, including all wages owed, in an amount according to proof.

    g.    An award of pre-judgment interest to Plaintiffs and Class Members;

    h.    An award of attorney's fees and court costs; and

    i.    Any other relief to which the Plaintiffs and Class Members may be entitled.

Dated: February 20, 2019

Respectfully submitted,

MARK KENDUS and KEITH KENDUS, individually and on behalf of all persons similarly situated,

By their attorneys,

_____
Michelle Cassorla (#19828)
Harold Lichten (*pro hac vice* forthcoming)
Michael Gsovski (*pro hac vice* forthcoming)
Lichten & Liss-Riordan, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com
mgsovski@llrlaw.com
mcassorla@llrlaw.com