# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MARK KENDUS**, *et al.*, | \* |
| | \* |
| Plaintiffs, | \* |
| | \* |
| v. | \*   Civil Case No. SAG-19-00496 |
| | \* |
| **USPACK SERVICES LLC**, *et al.*, | \* |
| | \* |
| Defendants. | \* |
| | \* |

************

## MEMORANDUM OPINION

.      THIS MATTER is before the Court on the Motion for Transfer by US Pack Med LLC ("Pack Med") and USPack Services LLC ("USPack"). ECF 11. Mark Kendus and Keith Kendus (collectively, "Plaintiffs") filed a Complaint on behalf of a putative class of couriers, alleging violations of the Fair Labor Standards Act ("FLSA"), Maryland's Wage and Hour Law ("MWHL"), and Maryland's Wage Payment and Collection Law ("MWPC"). ECF 1. Pack Med and USPack (collectively, "Defendants") move for this matter to be transferred to the Middle District of Florida, pursuant to the First-Filed rule, because a similar case was filed in that district prior to the start of this litigation. ECF 11. Plaintiffs filed an opposition, ECF 14, and Defendants filed a reply, ECF 15. For the reasons explained below, Defendants' Motion to Transfer is Granted.

**I.    FACTUAL BACKGROUND**

USPack provides courier services throughout the United States, including in Maryland. Plaintiffs' Complaint, ECF 1 ¶ 13. Pack Med is a subsidiary of USPack, and previously operated under the name "Medifleet, LLC."[1] *Id.* at 1. Drivers for Defendants pick up blood and other samples from local doctors' offices, and deliver them to hospitals and laboratories throughout

---

[1] Although Plaintiffs' Complaint uses the name "Medifleet," the Court will use "Pack Med" for consistency.

Maryland. *Id.* ¶ 15. Plaintiffs began working for USPack as medical delivery drivers in January, 2011, *id.* ¶ 16, 17, and ended their employment in January, 2018. *Id.* Plaintiffs allege that Defendants unlawfully failed to pay overtime wages, because Plaintiffs were "misclassified [] as independent contractors." *Id.* ¶ 32. Plaintiffs filed a Complaint on behalf of a putative class of "similarly situated" employees, alleging that Defendants violated the FLSA, MWPC, and MWHL. ECF 1 at 12–15. The Complaint in this Court was filed on February 20, 2019. ECF 1.

Approximately one month prior to the filing of the Complaint in this action, Curtis Hamrick ("Hamrick") filed a Complaint in the Middle District of Florida, on behalf of a putative class of USPack drivers. ECF 11- 2, Hamrick Complaint. Hamrick alleged that the defendants in that action, similarly, misclassified "drivers/couriers" as independent contractors, and denied them requisite overtime wages. *Id.* at 6. While Hamrick named Pack Med and USPack as defendants in that action, he also named several Florida subsidiaries. *Id.* at 5 (listing "Partsfleet, LLC," "Fleetgistics Holdings LLC," and "Scriptfleet, LLC" as additional defendants). The *Hamrick* Defendants filed a Motion to Compel Arbitration, which United States District Judge Wendy W. Berger denied. *Hamrick v. Partsfleet, LLC, et al.*, No. 19-cv-00137, ECF 88. Since the *Hamrick* Defendants have sought an interlocutory appeal of Judge Berger's Order to the United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit"), the case is presently stayed. *Id.*, ECF 100.

On October 15, 2019, this Court advised counsel that it would defer ruling on the Motion to Transfer. *See generally* ECF 26. Because Defendants indicated that they intended to file a Motion to Compel Arbitration, but had not yet done so, the Court determined that it would defer assessing the applicability of the First-Filed rule until after the Motion to Compel was briefed. *Id.* at 2–3. The Court could then determine whether the issues in this litigation are sufficiently similar

to issues in the *Hamrick* litigation, such that transfer of the case would be warranted. *Id.* Defendants filed their Motion to Compel Arbitration on November 1, 2019. ECF 27.

## II. LEGAL STANDARD

"Ordinarily, when multiple suits are filed in different Federal courts upon the same factual issues, the first or prior action is permitted to proceed to the exclusion of another subsequently filed." *Allied-General Nuclear Servs. v. Commonwealth Edison Co.*, 675 F.2d 610, 611 n.1 (4th Cir. 1982). Determining the applicability of the First-Filed rule requires the second-filed court to consider "whether the two competing actions are substantively the same or sufficiently similar to come within the ambit of the principle." *Glodek v. Richardson*, 2020 WL 263476, at *3 (D. Md. Jan. 16, 2020) (citation omitted). Three factors guide this Court's analysis of the First-Filed rule: (1) the chronology of the filings, (2) the similarity of the parties involved, and (3) the similarity of the issues at stake. *Id.* However, the rule is generally subject to "equitable exceptions, including a consideration of whether the balance of convenience weighs in favor of the second-filed court's continued exercise of jurisdiction over the second-filed suit." *Pfizer, Inc. v. Mylan, Inc.*, 2009 WL 10270101, at *2 (N.D. W. Va. Nov. 20, 2009).

## III. ANALYSIS

### A. Applicability of the First-Filed Rule

The First-Filed rule "is an important doctrine that is illustrative of the applicability of the principle of comity." *PBM Nutritionals, LLC v. Dornoch Ltd.*, 667 F. Supp. 2d 621, 632 (E.D. Va. 2009). In this case, all three factors weigh in favor of transfer to the Middle District of Florida.

#### 1. Chronology of Events

Considering factor one, it is uncontested that the *Hamrick* litigation started before the present action. Hamrick filed his Complaint on January 22, 2019, whereas Plaintiffs filed in this

Court on February 20, 2019. Thus, the chronology of events favors application of the First-Filed rule. *See, e.g.*, *Barrett v. USA Serv. Fin.*, *LLC*, 2019 WL 1051177, at *6 (E.D.N.C. Mar. 5, 2019) (concluding that the first factor supported transfer where first complaint was filed approximately one month prior to the second complaint).

### 2. Similarity of the Parties Involved

To apply the First-Filed rule, "the actions being assessed need not be identical if there is substantial overlap with respect to the issues and parties." *Hopeman Brothers, Inc. v. Continental Casualty Co.*, 2017 WL 1381665, at *7 (E.D. Va. Apr. 17, 2017). Here, every party in this case is either a party in the *Hamrick* litigation, or included in that case's proposed class definition. Plaintiffs do not dispute that Pack Med and USPack are defendants in both this action and in the *Hamrick* case. *See* ECF 14 ("Unbeknownst to the Plaintiffs, the Defendants had by the time of their filing been sued in Florida by Curtis Hamrick"). With respect to the putative class action, the *Hamrick* Complaint defines its class as:

> [E]very "delivery driver / courier" who contracted with US Pack as an independent contractor, who drove a vehicle with a gross vehicle weight rating of 10,000 pounds or less, and who worked for US Pack at any time within the past three (3) years.

ECF 11-2 ¶ 19. Meanwhile, Plaintiffs define their class as:

> All individuals who were classified as independent contractors and worked for Medifleet/US PACK MED LLC as medical couriers operating in the state of Maryland from February 20, 2016 to the present who worked over forty (40) hours in a week and were not compensated at one and one-half times their regular rate for hours worked over forty.

ECF 18 at 2.

While the *Hamrick* action has a broader scope, all members of Plaintiffs' class are necessarily included in the *Hamrick* definition. Thus, if the *Hamrick* class is certified, any person implicated by Plaintiffs' class definition will have the opportunity to opt-in to that litigation.

4

Indeed, Plaintiffs do not contest that all parties in this action are part of the *Hamrick* action. *See* ECF 14 (contesting only the similarity of the issues presented).

As noted above, Hamrick named several of USPack's Florida subsidiaries as defendants, along with USPack and Pack Med. But Plaintiffs have not articulated any reason that the inclusion of other subsidiaries would prevent the Florida Court from adjudicating issues with respect to USPack and Pack Med. *See, e.g.*, *Victaulic Co. v. E. Indus. Supplies, Inc.*, 2013 WL 6388761, at *3 (D.S.C. Dec. 6, 2013) (applying First-Filed rule even though "the parties in the two actions [were] not identical"); *Hopeman Brothers*, 2017 WL 1381665, at *8 (applying First-Filed rule even though the earlier litigation included an additional plaintiff); *Glodek*, 2020 WL 263476, at *3 (applying First-Filed rule although "the Tennessee Case also involve[d] various accounting firms" as named defendants). Accordingly, the substantial overlap between the parties in this case and in the *Hamrick* litigation weighs in favor of transfer to the Middle District of Florida.

### 3. Similarity of the Issues

As noted above, proper invocation of the First-Filed rule requires only substantial overlap between issues in the first and second case. Here, this factor also weighs in favor of transfer, because Plaintiffs and Hamrick have brought nearly identical lawsuits. Hamrick alleges that USPack, and its various subsidiaries, have systematically misclassified drivers as independent contractors, thereby depriving them of legally-mandated overtime pay. *See* ECF 11-2 ("US Pack failed to comply with the FLSA by misclassifying Plaintiff and the other delivery drivers / couriers who 'contracted' with US Pack as 'independent contractors' … and by failing to pay overtime compensation"). The gravamen of Plaintiffs' claims, in this litigation, is precisely the same. *See* ECF 1 at 1 (alleging "Defendants' practice of improperly classifying Plaintiffs and other courier drivers as independent contractors").

5

Notably, the defenses to liability, by the defendants in *Hamrick* and in this litigation, are virtually identical as well. This Court deferred ruling on the applicability of the First-Filed rule until after Defendants filed their Motion to Compel Arbitration, and both sides had the opportunity to brief the issue. Without expressing a view on the merits of the Motion to Compel Arbitration, this Court finds that it would need to conduct nearly the same analysis as was done in the Middle District of Florida. A Court would primarily need to consider (1) whether there is a valid arbitration provision in Plaintiffs' contract, (2) whether the "transportation worker" exception in the Federal Arbitration Act exempts Plaintiffs from arbitration, and (3) whether the arbitration agreement is invalid under any relevant state law. *See generally* ECF 28. Although Plaintiffs contended in their opposition that "it [was] unknown whether or not enough similarity exists between the classes of plaintiffs in this case and *Hamrick*," ECF 14 at 7, more information has now revealed that the substantive issues are similar.

Even so, Plaintiffs contend that this case is dissimilar from *Hamrick*, because Plaintiffs brought distinct claims under Maryland law. However, the presence of these additional claims does not defeat the application of the First-Filed rule. For example, *Troche v. Bimbo Food Bakeries Distribution* is instructive. *See* 2011 WL 3565054 (W.D.N.C. Aug. 12, 2011). In that case, the Court found that principles of comity required transferring a lawsuit to the location of an earlier-filed suit. In the earlier-filed action, the plaintiffs brought a putative class action and FLSA collective action against a bakery company. *Id.* at *1. The plaintiffs alleged, as here, that the defendants had misclassified employees as independent contractors, thus denying proper overtime compensation. *Id.* A second lawsuit, filed the following year, made largely the same allegations against the bakery's parent company. *Id.* The primary differences were that (1) the plaintiffs in the second action were *distributors* of bakery products, and (2) the second action included claims

based on North Carolina's Wage and Hour Act. *Id.* Despite the existence of unique state-law claims in the second suit, the Court concluded that "[t]he central issue in both actions is whether [] independent operators were mis-classified as independent contractors instead of employees." *Id.* at *3.

Similarly, any differences between the FLSA and Maryland law are not significant enough to justify retaining jurisdiction in this Court. In *Wilkie v. Gentiva Health Services*, visiting health care providers sought to certify a nationwide class action under the FLSA, based on the employer's allegedly unlawful compensation plan. 2010 WL 3703060, at *1 (E.D. Cal. Sep. 16, 2010) (asserting that employer maintained a "hybrid compensation plan," which included "per visit" payments for some work and hourly pay for other work). The plaintiffs sought to certify two sub-classes: one for North Carolina providers, and one for New York providers. *Id.* Approximately one month after the filing of that complaint, another group of plaintiffs brought similar allegations against the same employer. *See id.* However, the second group of plaintiffs also included state-law claims pursuant to California's Labor Code. *Id.* at *2. In assessing the similarity of the issues, the second-filed Court found that California law is "significantly different from the FLSA." *Id.* at *4. Thus, the Court declined to apply the First-Filed rule. *Id.* at *5.

Here, on the other hand, Maryland law is very similar to the FLSA. In fact, courts have identified the MWHL as "the state's equivalent of the FLSA." *Watkins v. C. Early Brown, Inv.*, 173 F. Supp. 2d 409, 416 (D. Md. 2001). For example, the MWHL "defines 'employer' identically to the FLSA." *Campusano v. Lusitano Construction, LLC*, 56 A.3d 303, 308 (Ct. Spec. App. Md. 2012). United States District Judge Richard Bennett ("Judge Bennett") encountered almost exactly the same issue in *Fisher v. Rite Aid Corp.*, 2010 WL 2332101 (D. Md. June 8, 2010). In an earlier FLSA class action, filed in district court in Pennsylvania, the plaintiffs alleged that Rite Aid had

7

misclassified certain managers as exempt from entitlement to overtime compensation. *Id.* at *1. In Judge Bennett's case, the plaintiffs made similar allegations against Rite Aid, but their claims were brought pursuant to the MWPC and the MWHL, instead of the FLSA. *Id.* at *2. Nonetheless, Judge Bennett concluded that the "underlying legal and factual issues in the cases are the same." *Id.* Specifically, to adjudicate either the FLSA claims or the state law claims, a court would need to determine whether Rite Aid had misclassified the relevant managers as exempt from overtime compensation. *Id.* Here, this case and the *Hamrick* litigation involve the same central issue, *i.e.*, whether USPack has misclassified individuals as independent contractors. Furthermore, although the *Hamrick* litigation does not involve the MWPC and MWHL, Maryland's law is not "overly complex so as to unduly burden" another court. *See Wyler-Wittenberg*, 899 F. Supp. 2d 235, 240 (E.D.N.Y. 2012) (finding application of First-Filed rule was appropriate where first case involved nationwide FLSA class action and second case had state law claims). The Middle District of Florida has the ability to leverage sub-classes and other routine mechanisms, in order to adjudicate Plaintiffs' Maryland-specific claims. If a plaintiff could eviscerate the First-Filed rule merely by adding a claim based on the state law of the second forum, it would render the rule a dead letter.

### B. Convenience Factors

"Although the Fourth Circuit has not stated explicitly that special circumstances may warrant an exception to the first-to-file rule, it has implicitly recognized a special circumstance exception in cases involving procedural fencing or forum shopping." *Gibbs v. Haynes Invests., LLC*, 368 F. Supp. 3d 901, 914 (E.D. Va. 2019) (citation omitted). Courts within this Circuit have considered various factors that may counsel against transfer in a particular case, including "how far each case has progressed, and the balance of convenience." *Id.* Plaintiffs cite *Quesenberry v. Volvo Group. North America, Inc.*, 2009 WL 648658 (W.D. Va. Mar. 10, 2009), to support their

8

argument that equitable considerations counsel against transfer to the Middle District of Florida. In *Quesenberry*, the plaintiff brought suit on behalf of employees at an assembly plant in Dublin, Virginia. *Id.* at *1. The employees sought a declaration that Volvo could not unilaterally terminate or modify retiree health benefits that had been provided for under the terms of a collective bargaining agreement. *Id.* Because Volvo filed a similar suit in a different federal court before the employees filed their suit, Volvo sought dismissal based on the First-Filed rule. *Id.* at *3. However, the Court determined that transfer was not appropriate under those circumstances. In particular, the plaintiffs alleged that Volvo had filed a preemptive suit in order to deprive the plaintiffs of their choice of forum. *Id.* at *3. The Court explained that departure from the First-Filed rule is warranted where there is evidence of bad faith, and, from the record, it appeared that Volvo might have been forum shopping with its earlier suit. *See id.* at *3–4 ("[T]he facts put before the court could lead to such an inference.").

Here, in contrast, Defendants certainly were not forum shopping, since the Florida lawsuit was filed by a different plaintiff. In fact, the suggestion that Defendants are forum shopping is belied by the current state of proceedings in the Middle District of Florida. Judge Berger denied the *Hamrick* defendants' motion to compel arbitration — a decision that is currently on interlocutory appeal to the Eleventh Circuit. As such, Plaintiffs have not explained why the Middle District of Florida would be a more favorable forum for Defendants.

Plaintiffs also contend that the traditional factors, *see* 28 U.S.C. § 1404, counsel against transfer. ECF 14 at 14–15. In *Gibbs*, the Court found that there were "legitimate concerns about personal jurisdiction" to proceed in the earlier-filed court. 368 F. Supp. 3d at 919. Additionally, not only were all of the witnesses located in Virginia, but there were also several other "closely related" actions pending in the second-filed court. *Id.* This case does not involve those unique

9

circumstances. While Plaintiffs' choice of venue is entitled to substantial weight, it does not outweigh interests of comity, or the potential for conflicting judgments on remarkably similar issues.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Transfer, ECF 11, is GRANTED. A separate Order follows.

Dated: March 10, 2020

/s/
Stephanie A. Gallagher
United States District Judge